

# 'Will I Get Out Today?'

## Louisiana is keeping people behind bars long after their sentences have expired, attorneys say.

Share to FacebookFacebookShare to TwitterTwitterShare to EmailEmail
Victoria LawSep 26, 2018

Four days before his scheduled release from a Louisiana prison, Ellis Ray Hicks received a visit from his aunt. Her phone had recently been cut off and she needed to know what time to pick him up from the prison.

Hicks asked a lieutenant who, after checking the prison's computer system, returned with stunning news—Hicks's release date had been moved from January to July. No one in the visiting room could explain this change.

This meant not only that Hicks was looking at an additional six months in prison, but also that Hicks's aunt had to postpone her open heart surgery. "She has no caretaker," Hicks told *The Appeal*. "My uncle has cancer, so can't move around much." That meant that his aunt, then in her late 60s, had to wait for her 50-year-old nephew to come home before she could proceed.

.After the visit, Hicks contacted the computation officer, or the prison administrator responsible for calculating his release date. Initially, the officer told him that Louisiana's probation and parole department had changed his release date. That's also what he told Hicks's aunt, who called once she got home. But, says Hicks, that wasn't true. Hicks attempted to get an explanation—if not a change back to his initial release date—without success. Instead, he was issued four release dates, none of which were Jan. 8.

"The law is clear," William Most, Hicks's attorney, told *The Appeal*. "Once a prisoner's sentence has expired, the jailor has a reasonable amount of time to process and release him. That

1



**Illustrations by Ana Galvañ**

Stas Moroz is a staff attorney at the Orleans Public Defenders office. At least once a week, he receives an email about someone who is being overdetained. There are a number of reasons for a person being held past their release date, he told *The Appeal*.

One common reason is the lag in communication between the Orleans Parish sheriff's office and the state's Department of Corrections. If a person has been sentenced to DOC custody, that person remains in the sheriff's custody while his or her paperwork is delivered to the DOC. Despite the advent of email and digital systems, local sheriffs and the state prison system do not have a shared computer system, so physical papers must be driven to the DOC

ensure that staff has the information and time needed to respond to his or her concerns." The DOC declined to comment, citing pending litigation.

But, says Hicks, if an outside attorney had not intervened and helped secure his release, he would have sat in prison for another six months. Meanwhile, his aunt would have continued to postpone the surgery she needed.

> You know you're free. You're supposed to be a free man. Johnny Traweek,
> imprisoned 21 days past release date

In court documents, Most identifies numerous past cases of overdetention. In the 1980s, the state of Louisiana paid Jerome Robinson over $250,000 for failing to calculate good time into his prison sentence. Two decades later, in 2003, the state settled a lawsuit for a person who had been held 1,213 days (or over three years) past his release date. In 2005, 2007, and 2009, it made payments to people who were held past their release dates. Most is also the counsel on two other lawsuits on behalf of men who were overdetained. One spent 41 days imprisoned past his release date; the other spent nearly two years in state prison.

Prison employees have also acknowledged the frequency of the practice. In the course of a lawsuit filed by James Chowns who spent 960 days imprisoned past his release date, DOC employees testified about the consistent overdetention that they observed. One employee testified that prison staff discovered approximately one case of overdetention per week for the past nine years. Another DOC employee, who reviewed sentence computations for the department's assistant secretary, testified that he typically discovered "one or two [people] a week" who were eligible for immediate release yet remained in custody. (Chowns's petition was ultimately denied by the state's Supreme Court.)

Yet despite these acknowledgments, the spate of lawsuits and the hefty settlements, Louisiana prisons and jails continue to hold people past their release dates. That's what happened to Brian McNeal, who spent 41 extra days in prison. He might have sat there even longer had his girlfriend not repeatedly called the DOC, the parole office, McNeal's probation officer, and Moroz, who had been McNeal's public defender. McNeal has recently filed suit against the DOC, alleging false imprisonment, negligence, violating his 14th Amendment right to due process, and violating the state Constitution's due process protections.

If this issue is so widespread, why does this continue to happen? "There is a complete lack of accountability," stated Most, who is also representing McNeal. "When the DOC finds out that someone has been overdetained, their practice is to change their release date to the date they figure it out, so that it looks like there has been no overdetention. Rarely are there consequences when someone is overdetained."

Ken Pastorick, the DOC's spokesperson, disputed Most's allegations, but declined further comment.



Illustrations by Ana Galvañ

The following week, Moroz, Traweek's public defender, learned that his client was still in jail and that the Orleans Parish sheriff had not sent Traweek's paperwork to the DOC. He emailed the sheriff's office, which responded, "Johnny Traweek was just sentenced on May 2, 2018, so his paperwork has not went up yet." This was on May 9, one week past the day a judge had sentenced Traweek to time served and told him that he would be released that day.

"Mr. Arcuri has it exactly backwards," said Most. "The Fifth Circuit has been very clear: 'a jailer has a duty to ensure that inmates are timely released from prison.' Currently, the sheriff is holding inmates sentenced to the custody of the DOC for days or weeks, even when he knows they should be immediately released. If the sheriff's department doesn't want to be responsible for DOC inmates' release dates, he should hand them over to the DOC shortly after sentencing."

Moroz said Arcuri's claims are not borne out in practice. He notes that, in the past year alone, the Orleans Public Defenders office has had had multiple clients sentenced to periods of incarceration that they had already served on the day they had been sentenced. "It is common for an individual who is sentenced to receive 'credit for time served' in parish jail (meaning that individual is sentenced to serve the amount of jail time that he or she has already completed) during a morning court session to sit in jail until the next day while OPSO [the sheriff's office] processes their releases," he wrote in an email.

But, if the person is sentenced to time served in state prison, the delays can stretch for days, if not weeks, while waiting for the sheriff's office to fulfill its responsibility of driving paperwork to the Department of Corrections.

"Both the Orleans Parish Sheriff's Office (OPSO) and the Department of Corrections ('DOC') have a responsibility to ensure that people in their custody are there *lawfully*," Moroz wrote.

Meanwhile, keeping people past their release dates have impacted their lives—and the lives of their families. "Speaking for the [five] men I represent," Washington said, "it sounds really bureaucratic when you talk about paperwork and time calculations, but for my clients it's their lives. It might be days, weeks or months, but these are days, weeks or months that they're not with their families, they're not able to work or provide for their families. You're sentenced to a set amount of time. When that time is up, you should be able to return to your family and to society."

Hicks went home on April 25, nearly four months past his initial release date. The following week, he took his aunt to the hospital for her long-awaited surgery. He is now caring for her as she recovers.

Others, however, have not been as fortunate. "In the time they were overdetained, my clients have missed their children's graduation. The birth of their grandchildren. Birthdays. The death of parents. A wife's stroke," Most said. "They couldn't be there for their loved ones in good times and hard times. Even after they are released, there is no going back. And that weighs on them."

Incarceration Jail Louisiana New Orleans Orleans Parish Sheriff's Office Orleans Public Defenders Prison Sentencing

## More in Incarceration

**Louisiana To Build New Prison For Women Displaced By 2016 Storm**

Midwest
Southeast
Northeast
Learn More

- About The Appeal
- Work with The Appeal
- Appeal Distribution Guidelines

Contact

- Contact

*A project of Tides Advocacy* Copyright © 2017 The Appeal
National Newsletter *(daily)*
Political Report
Thank you for subscribing to The Appeal
Sign Up

- Tweet
- Facebook
- LinkedIn
-

Share this selection

- Tweet
- Facebook
- LinkedIn
-

C/o Chief Judge Hicko, Jr.

United States Federal

Courthouse,

C 133 FANNIN St.

Shreveport, LA. 71101

I Am disabled & receive A S.S.
Check And food Stamps to survive.
I Am too Poor to pay the
Filing fee (that would be my
entire check for A month).

*Please!
Send me A Informa
Pauperis Petition to:
Ellis Ray Hicks, Jr.
P.O. Box 3705
Hot Springs, Ar. 71913

*(Rev. 8/3/15)*

**Case Number:** _____

## TO BE COMPLETED BY THE INSTITUTION OF INCARCERATION OR DETENTION

I certify that _____ (prisoner/detainee name and number)

has the current sum of $ _____ on account to his credit at _____

(name of institution). I further certify that during the past six months the applicant's average

balance was $ _____ and that the applicant's average monthly deposits were

$ _____ . I have attached a certified copy of the applicant's prison trust fund account

showing at least the past six months' transactions.

I further certify that the applicant does [ ] does not [ ] have a secondary

savings account(s), such as a certificate of deposit or savings bond.  The secondary account(s)

balance, if any, is $ _____ .


_____
**(Date)**


_____
**(Signature of Authorized Officer)**


_____
**(Printed Name of Authorized Officer)**


Page 6 of 6



*(Rev. 8/3/15)*

Case Number: _____

## CERTIFICATE

I request that an authorized officer of the institution in which I am confined, or other designated entity, complete the below financial certificate. I understand that:

(1)   if I commence a petition for Writ of Habeas Corpus in federal court pursuant to 28 U.S.C. §2254 or 28 U.S.C. §2241, the filing fee is $5.00, and such fee will have to be paid by me.

(2)   if I file a civil action with this court (such as an action pursuant to 42 U.S.C. §1983) the filing fee is $400.00, and, that:

    (a)   if my current account balance at the institution is $400.00 or more, I will not qualify for *in forma pauperis* status and I must pay the full filing fee of $400.00 before I will be allowed to proceed with the action;

    (b)   if my current account balance at the institution is $400.00 or less and I am a prisoner and not an ICE detainee, that before the action will be served on the defendants, I will be required to pay 20 percent of my average monthly balance, or the average monthly deposits to my account, whichever is greater. Thereafter I must pay installments of 20 percent of the preceding month's deposits to my account in months that my account balance exceeds $10.00, and I hereby authorize the institution where I am confined to make such deductions. I must continue to make installment payments until the **$350.00 ($400.00 minus a $50.00 administrative fee)** filing fee is fully paid, without regard to whether my action is closed or my release from confinement;

    (c)   if my current account balance at the institution is $400.00 or less and I am an ICE detainee granted IFP status, I will not pay any of the $400.00 filing fee in a civil matter and will only pay $5.00 in a habeas matter. If I am an ICE detainee and I am denied IFP status, I must pay the full $400.00 filing fee.

(3)   I further state that I have not directly or indirectly paid or caused to be paid to any inmate, agent of an inmate, or family member of any inmate a sum of money, favors or anything else for assistance in the preparation of this document or any other document in connection with this action.

(4)   if I am located in a prison participating in the Electronic Filing Pilot Project, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

_____     _____     _____
(Date)                 (Printed Name of Applicant)       (Signature & Prison Number of Applicant)

Page 5 of 6